UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| A. J. DAVIES | CIVIL ACTION NO. 05-cv-1100 |
| VERSUS | JUDGE STAGG |
| WARDEN LOUISIANA STATE PENITENTIARY | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Desoto Parish jury convicted A. J. Davies ("Petitioner") of second degree murder, two counts of attempted aggravated rape, and two counts of second degree kidnapping. The convictions were affirmed on direct appeal. State v. Davies, 813 So.2d 1262 (La. App. 2d Cir. 2002), writ denied, 843 So.2d 389 (La. 2003). After pursuing a state post-conviction application, Petitioner filed this petition for federal habeas corpus relief.

**Sufficiency of the Evidence**

Petitioner's first argument is that the evidence was not sufficient to support his convictions. The evidence at trial showed that on the evening of July 8, 2000, two juvenile girls, T.M. (age 17) and S.J. (age 14), asked Petitioner to give them a ride home. Petitioner lived in the Allendale community in Shreveport, Louisiana, as did the girls, and was known to the girls as a man who sold candy and small items in the neighborhood. After the girls got into Petitioner's car, he asked them whether they wanted a drink. Both girls refused the offer

and requested that he take them home. Petitioner drove by a store, looking for a drink, but it was closed. He drove on.

Petitioner passed the exit to the girls' neighborhood. T.M. testified that she told Petitioner to turn off onto Pete Harris Drive and take them home. Petitioner continued to drive south on I-49, passing exits that would lead to the girls' home. Petitioner stated that he had plenty of gas money and that he was just riding.

Petitioner drove out of Shreveport and into DeSoto Parish. While driving, Petitioner asked S.J., who was seated in the back seat of the automobile, to pass him a bat from the rear of the car. S.J. complied and handed the bat to him. Petitioner then asked both girls to have sex with him. When they refused, he began to threaten them.

Petitioner told the girls that they were going to have sex with him or die. T.M. testified that Petitioner put a knife to S.J.'s throat and ordered her to move to the front seat. Once S.J. was in the front seat, Petitioner began to fondle her and touch her breast. Petitioner pinched T.M. on the leg. He said that he was going to teach the girls a lesson about getting in the car with someone. Petitioner continued to threaten the girls while holding the bat and knife. T.M. asked Petitioner to exit at each exit they passed, but he kept driving.

The girls, whispering with each other, decided to jump from the car. Petitioner tried to lock the car doors at one point, but T.M. grabbed the lock on the passenger door so that it did not engage. T.M. testified that she decided to jump after Petitioner turned around after driving down a rural road. The car was then moving at a relatively slow speed. T.M. grabbed

S.J.'s hand and jumped from the car. When Petitioner realized that the girls were trying to escape, he sped up.

Donald Young, an eyewitness who was backing from a nearby driveway, testified that he saw T.M. jump from the car. He also stated that T.M. was holding on to a second person (S.J.), but the second person did not jump out at that time. Young also testified that as T.M. jumped, the car she jumped out of began to accelerate. He stated that T.M. was hysterical and repeatedly told him that Petitioner tried to rape her and her sister, who was still in the car with the man. T.M. also told Young that Petitioner was using a bat and a knife as weapons. Young took T.M. into a nearby home where he had been visiting. Young called 911.

Chief Petty Officer Michael Lynch, a DeSoto fireman, testified that T.M. was hysterical when he arrived at the scene. Lynch took T.M.'s report and began searching for the car and S.J. Lynch discovered S.J.'s body about 200 yards from where T.M. had jumped from the car. She was face down in a fire ant bed and covered with ants. An autopsy concluded that 14-year-old S.J. died from a lacerated spinal cord and multiple skull fractures.

While en route to the scene, officers stopped a white Cadillac that fit the description given by T.M. and Donald Young. Petitioner, who was driving the car, was alone. A bat and knife were found in the car. Petitioner was arrested.

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

The Louisiana appellate court invoked, recited and applied the Jackson standard on Petitioner's direct appeal, so its decision was not "contrary to clearly established Federal law," and Petitioner can obtain habeas relief only if the State court's decision was an "unreasonable application" of Jackson. 28 U.S.C. § 2254(d); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000); Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was so wrong as to be objectively unreasonable. Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate

decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

Petitioner does not argue that evidence was lacking with respect to any particular elements of the crimes for which he was convicted. Rather, he recites the elements of the charges, submits in a conclusory fashion that the state failed to prove all of the elements, and asks the court to evaluate the evidence for sufficiency. He suggests that a thorough review of the record will reveal testimony sufficient to create a reasonable doubt of guilt. As noted above, however, this court does not sit as a fact finder asking whether there is reasonable doubt. The issue is whether the state court's adjudication of the Jackson issue was objectively unreasonable.

With respect to aggravated rape, the state court noted that there was testimony Petitioner threatened to kill the girls if they did not have sex with him, Petitioner used a dangerous weapon, and he fondled one of the girls. The state court found this evidence sufficient to support convictions of attempted aggravated rape. That determination appears to be correct, given that aggravated rape as defined in La.R.S. 14:42 includes a rape committed when the victim was prevented from resisting because the offender was armed with a dangerous weapon.

The second degree kidnapping charges required proof that the girls were forcibly seized and carried from one place to another, physically injured or sexually abused, or were kidnapped while Petitioner was armed with a dangerous weapon. La.R.S. 14:44.1. Petitioner

argued on direct appeal that no kidnapping happened because the girls voluntarily got into his car. T.M. testified that the girls did voluntarily enter the car, but their repeated demands that Petitioner take them home were ignored, followed by threats of death if the girls did not have sex with Petitioner. The appellate court found that evidence sufficient under the Jackson standard, which was an entirely reasonable application of Jackson.

The second degree murder conviction required proof of the killing of a human being when the offender (1) had specific intent to kill or inflict great bodily harm or (2) when the offender was engaged in the perpetration or attempted perpetration of a felony such as aggravated rape or aggravated kidnapping, even though the offender had no intent to kill or inflict great bodily harm. La. R.S. 14:30.1. The state appellate court found that the record supported a finding of guilt under either theory of the crime. Evidence of guilt under the felony-murder theory was overwhelming. With respect to the specific intent theory, the state court pointed to evidence that Petitioner threatened to kill the girls if they did not comply, plus evidence that he accelerated his car to what a witness estimated was approximately 50 mph. The state court found that the sudden increase in speed when the driver knew the victim was attempting to jump from the car showed an intent to inflict great bodily harm. There is nothing objectively unreasonable about the state court's application of Jackson to these facts, so no habeas relief is permitted with respect to the sufficiency of the evidence arguments.

**Double Jeopardy**

The Double Jeopardy Clause protects against multiple punishments for the same offense. Whether different statutes punish the same offense is judged by whether each provision requires proof of an additional fact which the other does not. Brown v. Ohio, 97 S.Ct. 2221 (1977), citing Blockburger v. U.S., 52 S.Ct. 180 (1932). The Double Jeopardy Clause prohibits prosecution for both a felony-murder and the underlying felony, but it does not prevent prosecution for specific intent murder and another felony committed at the same time. Harris v. Oklahoma, 97 S.Ct. 2912 (1977); Taylor v. Whitley, 933 F.2d 325, 328 (5th Cir. 1991). Petitioner argues that his conviction for second degree murder and for underlying felonies violates the Double Jeopardy Clause.

The prosecutor's closing argument focused on the felony-murder theory with respect to second degree murder (Tr. 330), but the court instructed the jury that a conviction could be obtained if it found that the victim was killed when (1) Petitioner had specific intent to kill or inflict great bodily harm or (2) if Petitioner lacked specific intent to kill or inflict great bodily harm but was engaged in one of various felonies. Tr. Vol. 3, pp. 144-45. The jury later sent a note and asked for the definitions of manslaughter and second degree murder. The judge repeated the initial definition of second degree murder that allowed a conviction under either the specific intent or felony-murder theory. Tr. Vol. 3, p. 152. The jury returned a verdict of guilty, but it did not specify the theory on which the conviction rested.

Petitioner raised this argument on direct appeal, and the state appellate court rejected it based on a finding that the evidence was sufficient to support a conviction under the specific intent theory. State v. Davies, 813 So.2d at 1267-69. The Fifth Circuit has recently reviewed similar double jeopardy arguments in habeas cases that have arisen from Louisiana second degree murder convictions. The Fifth Circuit observed that it had noted *in dicta* that a person might be able to make out a double jeopardy violation if a state record did not provide a clue about which theory a defendant was convicted under, but there was not clearly established Supreme Court precedent on the point as required to permit habeas relief under 28 U.S.C. § 2254(d). Mitchell v. Warden, 254 Fed. Appx. 299 (5th Cir. 2007); Taylor v. Cain, 227 Fed. Appx. 387 (5th Cir. 2007). Additionally, as in the two cited cases, the state appellate court's finding with respect to the sufficiency of the evidence under the specific intent theory was not unreasonable. Habeas relief is, therefore, not permitted with respect to this claim.

**Perjured Testimony**

Petitioner argued in his post-conviction application that the prosecution knowingly used perjured testimony from T.M. Petitioner pointed to conflicts between pre-trial statements and trial testimony, plus what he argued was implausible testimony or testimony that conflicted with other evidence. For example, T.M. told an interviewer that Petitioner asked the girls if they wanted a ride home, but T.M. testified at trial that she "told" Petitioner to give them a ride. This would actually somewhat benefit the defense, but Petitioner seizes

upon it as destructive of T.M.'s overall credibility. He also points to her statement that the perpetrator did not have a moustache or facial hair, while a mugshot suggests to the contrary. Petitioner notes that T.M. once said that Petitioner made a U-turn in the road, but at another point in her testimony said that Petitioner turned around in someone's yard. Petitioner questions why the girls did not jump at that point, the mechanical possibility that T.M. could have stopped the door lock with her hand, and similar matters.

The state trial court summarily denied the post-conviction application. The appellate court determined that the submissions presented "do not show what, if any, perjured testimony of T.M. the district attorney allowed to be used at trial." The court added that the examples cited by Petitioner were merely "inconsistencies in [T.M.'s] testimony that appear to be immaterial." Relief was denied because the jury "has the duty to assign credibility and weight to a witness's testimony. Tr. Vol. 1, p.108. The Supreme Court of Louisiana denied writs without comment. State ex rel. Davies v. State, 902 So.2d 998 (La.).[1]

The Due Process Clause of the Fourteenth Amendment forbids the prosecution to knowingly use, or fail to correct, perjured testimony. Giglio v. U.S., 92 S.Ct. 763, 766 (1972); Napue v. Illinois, 79 S.Ct. 1173, 1178-79 (1959). To prove that the prosecution has denied him due process of law by relying on perjured testimony, a petitioner must prove that (1) a witness for the state testified falsely; (2) the state knew the testimony was false; and (3)

---

[1] The cited writ denial indicates that it issued in 2000, but appears to be a typographical error, as demonstrated by the denial's citation to the appellate court's 2004 writ decision and the dates on decisions that surround it in the Southern Reporter.

the testimony was material. Knox v. Johnson, 224 F.3d 470, 477 (5th Cir. 2000), citing Giglio, supra.

Petitioner's arguments merely point out minor inconsistencies in the testimony, which are to be expected in almost every trial. Such contradictions or inconsistencies establish a credibility question for the jury, but they do not provide a basis for relief from the conviction on the grounds that the prosecutor knowingly used perjury. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990). The state court's denial of relief on this claim was not an objectively unreasonable application of Napue or other clearly established Supreme Court precedent. Habeas relief is not available.

**Ineffective Assistance of Counsel**

Petitioner argues that his counsel was ineffective because he did not request that the jury be charged on the elements of simple kidnapping as a responsive verdict to *aggravated* kidnapping. The matter to which Petitioner refers was actually a decision as to whether simple kidnapping should be charged as a responsive verdict to *second degree* kidnapping. The trial judge and counsel discussed how La. C. Cr. P. art. 814 lists responsive verdicts for several crimes (but not second degree kidnapping) and whether simple kidnapping was nonetheless a proper responsive verdict. The issue was not resolved because defense counsel asked that the jury not be charged with simple kidnapping. Tr. Vol. 3, p. 114-15. When Petitioner raised this issue on post-conviction application, the state appellate court determined that, despite the lack of a specific provision in Article 814, simple kidnapping is

a lesser included crime of second degree kidnapping. It determined nonetheless that Petitioner had not shown how the failure to include that in the jury charge prejudiced him. Tr. Vol. 1, p. 108-09.

A decision to forego a charge on a lesser included offense is strategic, and strategic choices made after reasonable examination will seldom be held to be ineffective assistance. Courts are reluctant to second guess such matters. See Jason v. Cain, 2006 WL 2949523, *17 (E.D. La. 2006) (rejecting ineffective assistance claim based on failure to push for theft as a responsive verdict for purse snatching). It appears that the record does not contain counsel's specific reasons for his choice, but the record does reflect that counsel was aware of the issue and discussed it with the court at the charge conference before deciding not to push for the responsive verdict. Petitioner has yet to articulate any plausible basis by which there was any reasonable likelihood of a different outcome had counsel elected a different strategy. Under these circumstances, the undersigned cannot say that the state court's adjudication of this issue was an objectively unreasonable application of Strickland.

Petitioner next argues that counsel erred when he rested the defense's case without presenting evidence. Petitioner suggests that counsel should have tried to show that T.M. testified falsely when she said the girls went to her uncle's store to eat before they encountered Petitioner, counsel could have explored whether the bat or knife had Petitioner's fingerprints on them, and counsel could have examined whether the witness who saw T.M. jump from the car was intoxicated. The state appellate court pointed out that counsel had

cross-examined each of the state's witnesses, and Petitioner failed to identify defense witnesses who could have testified and what testimony they might have offered to establish a defense. Petitioner has offered this court nothing more than the same conclusory assertions, so the state court's decision withstands scrutiny under Section 2254(d).

Finally, Petitioner argues that his counsel should have presented mitigation evidence that would have resulted in a less severe sentence. The state appellate court rejected the claim because Petitioner failed to identify what evidence could have been presented to convince the sentencing judge to give a lesser sentence and, furthermore, prejudice was not shown because the second degree murder conviction mandated a natural life sentence. Petitioner has yet to identify the mitigating evidence that he says counsel should have known to present, and he has not explained any basis for prejudice. This decision also withstands review under Section 2254(d).

Accordingly;

**IT IS RECOMMENDED** that Petitioner's petition for writ of habeas corpus be **denied** and that his complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of May, 2008.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE